IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

JAMES T. KIMBALL,

    Petitioner,

vs.

JOSE VASQUEZ, Warden,

    Respondent.

CIVIL ACTION NO.: CV205-147

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner James T. Kimball ("Kimball"), an inmate currently incarcerated at the Federal Correctional Institution in Jesup, Georgia, has filed a petition for writ of habeas corpus pursuant to the provisions of 28 U.S.C. § 2241. Respondent[1] filed a Response. Kimball filed a Traverse/Motion for Summary Judgment, Respondent filed a Response, and Kimball filed a Reply. For the reasons which follow, Kimball's petition should be **DENIED**, and his Motion for Summary Judgment should be **DISMISSED**.

## STATEMENT OF THE CASE

Kimball is presently serving a sentence of incarceration imposed by the United States District Court for the Middle District of Florida. In the instant petition, Kimball contends that he was charged with a Code 331 violation, which is the introduction of non-hazardous contraband. Kimball asserts that, before he received a disciplinary hearing on

---

[1] Kimball filed his section 2241 petition while he was incarcerated at the Federal Correctional Institution in Yazoo City, Mississippi. The Warden of that facility was Kurshid Yusuff, who filed the initial Response to Kimball's petition. Once Kimball was transferred to the Federal Correctional Institution in Jesup, Georgia, and his case was transferred to this Court, Jose Vasquez filed a Response in which he adopted the arguments set forth in Warden Yusuff's Response. (Doc. No. 30, p. 3.)

AO 72A
(Rev. 8/82)

this matter, he was placed in the Special Housing Unit ("SHU") but was not given an administrative detention order detailing the reason he was placed in administrative detention. Kimball alleges that thirteen (13) days of his good conduct time were taken away from him after he received a hearing on this charge. Kimball also alleges that his due process rights were violated because he was not allowed to call witnesses, present documents, or have staff assistance at this hearing.

Respondent avers that Kimball's due process rights were not violated. Respondent asserts that there is "some evidence" in the record to support the Disciplinary Hearing Officer's ("DHO") decision, and this is all that is required under due process. Respondent also asserts that the taking of thirteen (13) days' good conduct time as a disciplinary sanction and placing Kimball in administrative detention are permitted under the Regulations and did not create an atypical or significant hardship in the prison context.

## DISCUSSION AND CITATION OF AUTHORITY

**I.   Kimball's Due Process Rights Were Not Violated.**

Kimball alleges that he was charged with a Code 331 violation, the introduction of non-hazardous contraband, via an incident report while he was incarcerated at the Federal Correctional Complex in Coleman, Florida. Kimball contends that he was charged with receiving unauthorized legal materials and supplies from his attorney during a visit. Kimball asserts that he was placed in administrative detention the same day and remained there for 21 days, which he contends was an independent form of punishment. Kimball also asserts that he was not given an administrative detention order detailing the reason he was placed in administrative detention until after the DHO hearing. Prior to the DHO hearing,

2

Kimball avers that a Unit Disciplinary Committee ("UDC") considered the charge made against him; the UDC referred the charge to the DHO and recommended that, if Kimball were found guilty of the charge, he should be disallowed 50% of his good conduct time, receive five (5) days' disciplinary segregation, and have his visiting privileges restricted for six (6) months. Kimball alleges that he was given written notice of the hearing before the DHO and that he signed this notice indicating that he received it. Kimball further alleges, however, that he was not wearing his glasses at the time and did not realize the notice also indicated that he waived staff representation and the right to call witnesses at this hearing. Kimball asserts that he notified his Unit Team in writing that he rescinded that waiver. Kimball contends that he also provided a list of witnesses he wished to call at the DHO hearing, as well as a list of documents he requested to be produced at the hearing. Kimball alleges that the DHO informed him that the hearing would be conducted without any witnesses, documents, or a staff representative. Kimball avers that the DHO considered the statements contained in the incident report, as well as statements Kimball made, and concluded that Kimball had exchanged legal materials and supplies with his attorney. Kimball also avers that he was found guilty of a Code 305 violation, which is the attempted possession of anything not authorized, and was sanctioned by the disallowance of 13 days' good conduct time.

Respondent asserts that the UDC did not make a finding as to whether Kimball committed the prohibited act as charged; instead the UDC referred the matter to a DHO for further proceedings. Respondent also asserts that Kimball was advised of his due

AO 72A
(Rev. 8/82)

process rights[2] before the DHO hearing and signed documents which evidence that Kimball did not request to have a staff representative or any witnesses at the DHO hearing. Respondent alleges that Kimball admitted the charges against him and stated that he had exchanged things with his attorney for some time and that he was given permission to do so while he was housed in another unit. Respondent also alleges that Kimball indicated that he did not think it was a problem to receive these items[3] at the time but that he now understands that he is not permitted to have anything that is not authorized by staff, given to him by staff, and/or purchased at the commissary. (Resp't's Ex. 11, p. 1.) The DHO determined that the greater weight of the evidence before him supported the charge that Kimball had committed the prohibited act of attempted possession of anything not authorized for retention, a Code 305 violation, which is a reduction from the Code 331 charge Kimball originally faced. The DHO imposed sanctions of confiscation and disposal of the prohibited items and the disallowance of 13 days' good conduct time. Respondent contends that the evidence upon which the DHO relied is clearly spelled out in his report. Respondent also contends that Kimball spent 18 days, not 21 days, in Administrative Detention, which did not create an atypical or significant hardship on him.

---

[2] "When charges are to be referred to the Discipline Hearing Officer, the UDC shall advise the inmate of the rights afforded at a hearing before the DHO. The UDC shall ask the inmate to indicate a choice of staff representative, if any, and the names of any witnesses the inmate wishes to be called to testify at the hearing and what testimony they are expected to provide. The UDC shall advise the inmate that the inmate may waive the right to be present at the Institution Discipline hearing, but still elect to have witnesses and/or a staff representative appear in the inmate's behalf at this hearing." 28 C.F.R. § 541.15(i).

[3] The items Kimball was charged with having were legal pads, Post-it Notes and page markers, manilla file folders, a pen, and handwritten legal papers. (Resp't's Ex. 4.)

4

A.   **Disciplinary Proceeding**

A plaintiff states a cognizable claim for the deprivation of his procedural due process rights when he alleges the deprivation of a constitutionally protected liberty or property interest, state action, and constitutionally inadequate process. Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003) (quoting Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)). Constitutionally adequate process requires compliance with the minimum due process protections accorded to an inmate in prison disciplinary proceedings: (1) the right to receive written notice of the charges against him at least 24 hours before his hearing; (2) the right to call witnesses and present documentary evidence, where doing so would not be unduly hazardous to institutional safety or correctional goals; and (3) the right to receive a written statement setting forth the disciplinary committee's findings of fact. Wolff v. McDonnell, 418 U.S. 539, 563-66, 94 S. Ct. 2963, 2978-80, 41 L. Ed.2d 935 (1974). In addition, the Supreme Court has held that a finding of "some evidence" in the record to support the decision of a prison disciplinary board is necessary to satisfy the requirements of due process. Superintendent, Massachusetts Corr'l Inst. v. Hill, 472 U.S. 445, 455, 105 S. Ct. 2768, 2774, 86 L. Ed.2d 356 (1985). The determination of whether the standard is satisfied merely requires inquiry into "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455, 105 S. Ct. at 2774.

Based on the evidence before the undersigned, Kimball's due process rights were not violated. Kimball was advised of the DHO hearing approximately five (5) days prior to the hearing. (Resp't's Ex. 10.) Kimball was also advised of his right to call witnesses and to present documentary evidence in support of his position. (Id.) Kimball does not dispute

5

that he knew he had the right to call witnesses and to present documentary evidence; Kimball's dispute on this point is that he did not realize he had waived these rights and attempted to rescind this waiver. However, under a due process inquiry, this is not the proper focus. In addition, it appears that, not only was Kimball advised of his right to receive a copy of the written findings of fact by the DHO, he actually received a copy of these findings. (Resp't's Ex. 11.) Finally, there is evidence in the record to support the DHO's findings. The DHO considered the version of events outlined in the disciplinary report, the confiscation and disposition of contraband form, a memorandum from an officer who overheard Kimball on the telephone with his wife, and Kimball's own statements. (Resp't's Ex. 11, p. 3.) It is not the role of this Court to determine the propriety of this evidence, only that there is some evidence in the record to support the findings of the DHO. See Hill, 472 U.S. at 455, 105 S. Ct. at 2774. Kimball's due process rights were not violated regarding the disciplinary hearing he received.

### B.   Kimball's Sanction and Housing in Administrative Detention

"The Due Process Clause protects against deprivations of 'life, liberty, or property without due process of law.'" Kirby v. Siegelman, 195 F.3d 1285, 1290 (11th Cir. 1999) (quoting U.S. CONST. amend. XIV). The Supreme Court has identified two situations in which a prisoner can be deprived of liberty such that the protection of due process is required: (1) there is a change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court; and (2) the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate

6

in relation to the ordinary incidents of prison life." Id. at 1290-91 (quoting Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L. Ed.2d 148 (1995)).

In Sandin, the United States Supreme Court addressed whether the punishment inmate Conner received for a disciplinary violation was sufficient to invoke a liberty interest protected by the Due Process Clause. 515 U.S. at 472, 115 S. Ct. at 2293. Following a disciplinary conviction, Conner received 30 days' disciplinary segregation in a Special Housing Unit. Id. at 475, 115 S. Ct. at 2296. After noting that the segregation was a form of punishment, the Court concluded that it was not a dramatic departure from the conditions of Conner's indeterminate sentence. Id. at 485, 115 S. Ct. at 2301. The Court determined that the conditions of disciplinary segregation at the prison where Conner was incarcerated were virtually indistinguishable from the conditions of administrative segregation and protective custody. Id. at 486, 115 S. Ct. at 2301. Also, the Court noted that the conditions of disciplinary segregation were not markedly different from the conditions in general population. Id. The Court concluded that the conditions of disciplinary segregation did not impose an "atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. Thus, the Court determined that Conner was not entitled to due process protection. Id. at 487, 115 S. Ct. at 2302.

Kimball was housed in Administrative Detention for 18 days pending the investigation and hearing of this matter. (Resp't's Exs. 6-7.) He has not shown that the conditions in administrative detention were different than those in general population. The disallowance of 13 days' good conduct time did not impose an atypical and significant hardship on Kimball. This disallowance is an appropriate sanction for committing a Code 305 violation. (Resp't's Ex. 14, Program Statement 5270.07, Ch. 4, p. 10.) Moreover,

7

AO 72A
(Rev. 8/82)

Kimball is serving a 156 month term of imprisonment, and the disallowance of 13 days of good conduct time does not extend the length of his sentence. Accordingly, Kimball's due process rights were not violated.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Kimball's petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, be **DENIED**. It is also my **RECOMMENDATION** that Kimball's Motion for Summary Judgment (Doc. No. 32) be **DISMISSED**.

**SO REPORTED** and **RECOMMENDED**, this 28th day of November, 2005.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)